UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCINE PALKOVIC,

                Plaintiff,

    v.                                    1:04-CV-0866

MICHAEL J. JOHNSON, AVERILL PARK
CENTRAL SCHOOL DISTRICT BOARD OF
EDUCATION, AVERILL PARK CENTRAL
SCHOOL DISTRICT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

COOPER, ERVING & SAVAGE, L.L.P.        HENRY COLLINS, ESQ.
Attorneys for plaintiff                        PHILLIP G. STECK, ESQ.
39 North Pearl Street                         AMANDA A. AVERY, ESQ.
4th Floor
Albany, New York 12207

BARTLETT, PONTIFF, STEWART            EILEEN M. HAYNES, ESQ.
& RHODES, P.C.
Attorneys for defendants
One Washington Street
Glens Falls, New York 12801

DAVID N. HURD
United States District Judge


**MEMORANDUM DECISION and ORDER**

**I. INTRODUCTION**

        Plaintiff Marcine Palkovic ("plaintiff" or "Ms. Palkovic") brings this action against

defendants Michael J. Johnson ("Mr. Johnson"), the Averill Park Central School District

("District"), and the Averill Park Central School District Board of Education ("Board of

Education"), pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Specifically, plaintiff claims that she was denied her rights to due process of law (1) by defendants' repeated initiation of disciplinary proceedings pursuant to New York Education Law § 3020-a ("§ 3020-a"), and (2) by the manner in which the third § 3020-a proceeding was conducted.

Defendants previously moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was granted on timeliness grounds in an oral decision from the bench. Plaintiff appealed and the Court of Appeals for the Second Circuit vacated the decision and remanded for a determination of whether plaintiff's complaint fails to state a claim upon which relief can be granted. Palkovic v. Johnson, No. 04-5757, 150 F. App'x 35 (2d Cir. 2005). As a result, defendants again move to dismiss plaintiff's complaint. Plaintiff opposes. Oral arguments were heard on February 24, 2006, in Albany, New York. Decision was reserved.

## II. **FACTS**[1]

Sometime prior to April 1997, the Board of Education compelled Ms. Palkovic, an erstwhile tenured elementary school teacher with the District, to undergo two medical examinations pursuant to New York Education Law § 913 ("§ 913 examination"). Both examiners concluded that plaintiff was mentally incompetent. Based on these findings, defendants initiated the first proceeding to terminate her employment pursuant to § 3020-a.[2] A hearing was conducted before a duly appointed hearing officer. Plaintiff defended herself

---

[1] The following facts are taken from the complaint, as is required when assessing a motion to dismiss under Rule 12(b)(6).

[2] Section 3020-a outlines the procedures by which districts can seek disciplinary action against tenured employees. See N.Y. Educ. L. § 3020-a.

against the charges by calling her own expert witnesses who testified that she was mentally competent.

On April 13, 1998, while the first § 3020-a charges were pending, then District Superintendent James Butterworth ("Mr. Butterworth") suspended plaintiff with pay, prohibited her from entering District grounds, and requested that she stay away from the residences of teachers, staff, and parents.  On April 28, 1998, notice of this action was sent to her colleagues, who were advised to call the police if they felt that plaintiff's actions were suspicious or threatening.  Thereafter, plaintiff was arrested for Harassment in the First Degree and arraigned before the Poestenkill Town Court.  The charges were eventually dismissed.

On May 1, 1998, Mr. Butterworth directed plaintiff to undergo another § 913 examination.  This examination was conducted by Dr. J. Bernstein who reported that he was unable to perform a complete evaluation and render an opinion as to plaintiff's mental competency and fitness to teach.

On August 23, 1999, the hearing officer issued a decision on the first § 3020-a hearing in which he found plaintiff to be mentally competent; however, he suspended her for one year without pay based on charges not specified in the complaint.  Thereafter, in December 1999, the District asked the New York State Education Department ("Education Department") to investigate plaintiff's conduct, contending that she harassed and intimidated witnesses and District employees at the time of the first § 3020-a proceeding.  The District also sought a determination of plaintiff's moral character pursuant to Part 83 of the Regulations of the Commissioner of Education.

On April 4, 2000, Mr. Johnson, who had replaced Mr. Butterworth as District Superintendent, directed plaintiff to submit to another § 913 examination, this time with Dr. Steven Kronick.  The examination was scheduled to take place on April 18, 2000.  Plaintiff notified Dr. Kronick on April 15 that she would not be able to appear at the examination because she had "'not had sufficient time to receive legal counsel'" prior to that date.  (Compl. ¶ 27.)  The day after the scheduled examination date, plaintiff sent a letter to Mr. Johnson "regarding rescheduling the § 913 exam."  Id. ¶ 28.  On April 26, 2000, the Board of Education sent a letter to plaintiff advising her that it had initiated a second § 3020-a proceeding against her on charges of insubordination, conduct unbecoming a teacher, and incompetence, for failing to attend the April 18, 2000, examination with Dr. Kronick.  Shortly thereafter, plaintiff submitted to an examination by Dr. Kronick.

As part of a § 913 examination plaintiff was tested by Dr. Frederick J. Smith on May 18, 2000, and May 25, 2000.  On June 13, 2000, Dr. Smith reported that plaintiff was "'very resistant to treatment if such were to be recommended,'" and  "'essentially impossible to supervise' because of her inability to recognize her own contribution to interpersonal conflict."  Id. ¶ 30.  Dr. Smith also noted that plaintiff's condition was "'highly stable and unlikely to change over time,'" finding her mentally incompetent and unfit to teach.  Id.

On June 14, 2000, the District sent a letter to plaintiff notifying her that it had initiated a third § 3020-a proceeding against her on charges of "'Incompetence in that she lacks the ability to develop insight or to modify her behaviors and is mentally incompetent to function in a classroom setting.'"  Id. ¶ 32.  On June 16, 2000, Dr. Kronick also reported that plaintiff was not mentally competent to teach in the District.  On September 13, 2000, the

District added charges related to ten instances of alleged inappropriate behavior toward prior witnesses, or their relatives, during or subsequent to the first § 3020-a proceeding.

On November 16, 2000, a hearing on the second § 3020-a charges was held before Hearing Officer Eric Lawson. At this hearing, Mr. Johnson testified that he ordered the § 913 examinations with Drs. Kronick and Smith because of plaintiff's behavior toward her colleagues, pointing out that she had been observed outside of staff members' homes. On January 8, 2001, Hearing Officer Lawson found plaintiff guilty of insubordination and conduct unbecoming a teacher for failing to submit to the April 18, 2000, § 913 examination; however, he did not find plaintiff to be incompetent.

On January 3, 2001, hearings on the third § 3020-a charges commenced before Hearing Officer Dennis J. Campagna. At these hearings, Drs. Kronick and Smith testified that plaintiff was mentally incompetent and unfit to teach. Mr. Johnson testified that plaintiff's colleagues told him of their grave concerns about her behavior at the time of the first § 3020-a proceeding, which he described as "stalking." Id. ¶ 39. He also testified that such concerns were not brought before the hearing officer at the first § 3020-a proceeding and that the Education Department did not proceed against plaintiff's license as a result of the Part 83 proceeding. The Hearing Officer heard testimony of others and also reviewed evidence from the earlier hearings, including the medical reports which found plaintiff to be mentally competent.

On February 23, 2001, Hearing Officer Campagna issued a decision in the third proceeding, finding that plaintiff's stalking-type behavior provided reasonable grounds for ordering the examinations by Drs. Kronick and Smith, and also finding plaintiff to be mentally incompetent and unfit to teach. He also noted that he was not precluded from considering

these issues on grounds of res judicata because "'an individual's mental status can change over time.'" Id. ¶ 42.

Plaintiff appealed Hearing Officer Campagna's decision pursuant to Article 75 of the New York Civil Practice Law and Rules. Supreme Court Justice James B. Canfield confirmed the decision. Palkovic v. Averill Park Cent. School Dist., Index No. 202867 (N.Y. Sup. Ct. Rensselaer County Nov. 15, 2001).

## III. DISCUSSION

### A. Motion to Dismiss Standard

On a motion to dismiss, the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, the defendants' present motion should only be granted if it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. See Grandon, 147 F.3d at 188; Goldman, 754 F.2d at 1065.

### B. Jurisdiction Under the *Rooker-Feldman* Doctrine

Defendants move to dismiss plaintiff's complaint on the ground that the Rooker-Feldman doctrine precludes the exercise of jurisdiction over this action. Under the Rooker-Feldman doctrine, federal district courts are precluded from exercising jurisdiction over suits that have been properly disposed of at the state-court level. Rooker v. Fidelity Trust Co., 263 U.S. 413, 416, 44 S. Ct. 149, 150 (1923); District of Columbia Court of Appeals v. Feldman,

460 U.S. 462, 476, 103 S. Ct. 1303, 1311 (1983). Put another way, the power to review final determinations of the courts of the several states resides exclusively with the United States Supreme Court. Rooker, 263 U.S. at 416, 44 S. Ct. at 150; Feldman, 460 U.S. at 476, 103 S. Ct. at 1311; 28 U.S.C. § 1257. Application of the Rooker-Feldman doctrine is confined to those cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005) (noting that lower federal courts have construed the Rooker-Feldman doctrine "far beyond the contours" of the cases for which it is named); see also Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) (reassessing Second Circuit Rooker-Feldman jurisprudence in light of Exxon Mobil).

In this case, Ms. Palkovic filed suit on July 22, 2004, almost three years after the state-court judgment was rendered. Moreover, defendants prevailed in state court, making plaintiff a "state-court loser." Therefore, these Rooker-Feldman elements are met. However, the essential Rooker-Feldman requirement is that the state-court loser complain of an injury caused by a state-court judgment. See Hoblock, 422 F.3d at 87.[3] An injury is said to be caused by a state-court judgment when it actually produces the actions complained of, rather than when it simply ratifies, acquiesces in, or fails to remedy such actions. Id. at 88.

Defendants claim that by seeking to declare null and void the findings made at the third § 3020-a proceeding, plaintiff is seeking an impermissible appellate determination of a state-court judgment under the Rooker-Feldman doctrine. However, the Rooker-Feldman

---

[3] In Hoblock, the Second Circuit suggested that to complain of an injury caused by a state-court judgment is necessarily to invite review and rejection of that judgment. 422 F.3d at 85 n.4. Therefore, reference to the latter phrase will hereafter be avoided.

doctrine applies only to judicial review of state-court judgments, and never to determinations rendered by state administrative agencies. Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 644 n.3, 122 S. Ct. 1753, 1759 n.3 (2002). Certainly, the New York State Education Department is a state administrative agency, see N.Y. Educ. L. § 101 (McKinney 2000); thus, its § 3020-a determinations are not state-court judgments as contemplated by the Rooker-Feldman doctrine and it cannot be said that plaintiff is seeking an impermissible appellate determination of a state-court judgment.

Defendants also incorrectly argue that the injuries of which Ms. Palkovic complains were caused by the state-court judgment. In this case, plaintiff's alleged injury is the denial of her right to due process of law; specifically, defendants' "fail[ure] to abide by" the first § 3020-a proceeding and "continual[ ] re-instituti[on]" of additional § 3020-a proceedings, and the manner in which the third § 3020-a proceeding was conducted. (Compl. ¶ 1.) Defendants contend, however, that the true injury of which plaintiff complains is her loss of employment. Under either interpretation of plaintiff's complaint, the Rooker-Feldman doctrine does not apply.

In Hoblock, the Second Circuit found that plaintiffs' injury was indeed caused by a state-court judgment. See Hoblock, 422 F.3d at 88-89. There, plaintiffs filed a § 1983 action complaining of defendant board of elections' failure to count absentee ballots after a state court ordered that the ballots not be counted. Id. at 89. The court found that the state-court judgment did in fact cause the injury because but for the judgment, the board would have counted the ballots. Id. Moreover, the court pointed out that "[t]he state-court judgment did not ratify, acquiesce in, or leave unpunished an anterior decision by the Board not to count

the ballots. Instead, the state-court judgment produced the Board's refusal to count the ballots, the very injury of which the voters complain." Id.

Assuming, for the sake of argument, that defendants' interpretation of plaintiff's complaint is correct, i.e., the true injury of which she complains is her loss of employment, it cannot be said that the state-court judgment caused her injury. Plaintiff's employment was terminated by the hearing officer at the conclusion of the third § 3020-a proceeding. Unlike in Hoblock, it is not the case here that but for the state-court judgment, plaintiff's employment would not have been terminated. In fact, the opposite is true: if plaintiff had chosen not to pursue state-court review of the third § 3020-a proceeding, she would have been terminated nonetheless. Thus, the state-court judgment in this case did not produce plaintiff's termination; rather, it simply confirmed the hearing officer's decision to terminate plaintiff's employment. As such, the Rooker-Feldman doctrine does not apply under defendants' interpretation of the complaint.

Under the correct view -- that Ms. Palkovic complains of a denial of due process in the initiation and content of the third § 3020-a proceeding -- it still cannot be said that the state-court judgment caused plaintiff's injury. The initiation and execution of the third § 3020-a proceeding occurred before the state-court judgment in this case. Therefore, the state-court judgment could not have produced actions of which plaintiff complains. At best, the state-court judgment chose not to remedy such actions. As such, the Rooker-Feldman requirements are not met in this case.

Finally, defendants incorrectly argue that plaintiff's claim is barred under the Rooker-Feldman doctrine because it is "inextricably intertwined" with the state-court judgment. (Defs.' Mem. 9-10.) If a plaintiff complains of injuries caused by a state-court

judgment and seeks review and rejection of the judgment, a subsequent federal suit is said to be "inextricably intertwined" with the state court judgment and, thus, outside the jurisdiction of federal district courts. Hoblock, 422 F.3d at 86-87. As such, the term "inextricably intertwined," which was first used in Feldman, 460 U.S. at 482 n.16, 486-87, 103 S. Ct. at 1315 n.16, 1317, has no legal significance independent of the Rooker-Feldman requirements enunciated in Exxon Mobil. Hoblock, 422 F.3d at 86-87. As discussed above, the Rooker-Feldman requirements are not met in this case because plaintiff's injury was not produced by the state-court judgment. Thus, defendants' argument that the claim is barred simply because they believe it is inextricably intertwined with the state-court judgment holds no weight.

Therefore, plaintiff's complaint will not be dismissed on Rooker-Feldman grounds.

### C. Collateral Estoppel

Defendants move to dismiss plaintiff's complaint on the ground that Ms. Palkovic's claims are barred under the doctrine of collateral estoppel. Under the doctrine of collateral estoppel, the relitigation of issues actually litigated and decided in an earlier proceeding are barred. Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995). In order for collateral estoppel to apply, four requirements must be met: (1) the issues must be identical; (2) the issue must have been actually litigated and decided in the earlier proceeding; (3) a full and fair opportunity to litigate the issue in question must have been afforded at the earlier proceeding; and (4) the issue must have been essential to the judgment in the earlier proceeding. Id. (citing Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d Cir. 1986)).

In this case, plaintiff raises due process issues in relation to the initiation and content of the <u>third</u> § 3020-a proceeding.  The question is not, as defendants argue, simply whether plaintiff had a full and fair opportunity to litigate the due process issues.  Rather, they must show that these identical issues were actually raised, litigated, and decided.  In fact, these issues were not litigated and decided in an earlier proceeding.  Thus, plaintiff's complaint will not be dismissed on this ground.

### D. Due Process

Defendants move to dismiss plaintiff's complaint on the merits, asserting that she was not denied due process of law.  As stated above, plaintiff claims that her due process rights were violated (1) by defendants' repeated initiation of § 3020-a proceedings, and (2) by the manner in which the <u>third</u> § 3020-a proceeding was conducted.

### 1. Defendants' Initiation of the *Third* § 3020-a Proceeding

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[4]  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191 (1965)).  Plaintiff correctly argues that no meaningful opportunity to be heard can exist where a constitutionally adequate hearing is undercut by a

---

[4] To be sure, plaintiff was deprived of a property interest when her employment with the District was terminated.  <u>See</u> Strong v. Bd. of Educ. of Uniondale Union Free School Dist., 902 F.2d 208, 211 (2d Cir. 1990) (holding that plaintiff's position as a tenured teacher was "indisputably a property interest protected by the fourteenth amendment").

subsequent hearing conducted pro forma without the introduction or consideration of new evidence. However, that did not happen to Ms. Palkovic.

According to the complaint, sometime during the first § 3020-a proceeding plaintiff was suspended for allegedly engaging in inappropriate conduct toward witnesses and District employees. District employees were advised to call the police if they felt that plaintiff's actions were suspicious or threatening. At one point during this time frame, plaintiff was arrested for Harassment; but the charges were eventually dismissed. The District asked the Education Department to investigate what it described as plaintiff's harassment and intimidation of witnesses and District employees.[5] According to the complaint, Mr. Johnson testified that these allegations were not brought before or considered by the hearing officer at the first § 3020-a proceeding. In light of this alleged conduct, Mr. Butterworth compelled plaintiff to undergo a § 913 examination which proved inconclusive. Upon assuming duties as Superintendent, Mr. Johnson ordered additional § 913 examinations. Upon learning of Dr. Smith's report, which concluded that plaintiff was mentally incompetent and unfit to teach in the District, defendants commenced the third § 3020-a proceeding.

Based on the allegations of plaintiff's inappropriate conduct, defendants were clearly justified in both ordering the additional § 913 examinations, see N.Y. Educ. L. § 913 (giving district boards of education broad powers to require district employees to submit to medical examinations), and commencing the third § 3020-a proceeding. Moreover, according to the complaint, the hearing officer at the third § 3020-a proceeding was aware of plaintiff's alleged inappropriate conduct and Dr. Smith's report, as well as Dr. Kronick's report

---

[5] While the complaint fails to describe the alleged conduct, or provide any reasonable explanation for it, Mr. Johnson later testified that plaintiff was stalking District employees and had been observed outside their homes.

(which also found plaintiff to be mentally incompetent and unfit to teach) and additional allegations of inappropriate conduct during or subsequent to the first § 3020-a proceeding which defendants added as charges.

Therefore, the third § 3020-a proceeding was not a pro forma hearing and plaintiff's due process rights were not violated in that regard.

### 2.  The *Third* § 3020-a Proceeding

While plaintiff does not explicitly argue that the procedures laid out in § 3020-a are constitutionally inadequate or that defendants failed to abide by these procedures, she does contend that the third § 3020-a proceeding "departed in important respects from due process requirements." (Pl.'s Mem. 16.)  Due process does not require the application of a fixed, unwavering rule of law; rather, it calls for procedural safeguards in proportion to the particular circumstances in a given situation.  Mathews, 424 U.S. at 334. 96 S. Ct. at 902 (citing Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972)); Donk v. Miller, 365 F.3d 159, 163 (2d Cir. 2004).  The procedures laid out in § 3020-a provide "'more than adequate procedural safeguards to satisfy . . . due process rights under the Fourteenth Amendment.'"  Montefusco v. Nassau County, 39 F. Supp.2d 231, 239 (E.D.N.Y. 1999) (quoting Sullivan v. Bd. of Educ. of Eastchester Union Free School Dist., 131 A.D.2d 836, 838 (N.Y. App. Div. 2d Dep't 1987)).

Plaintiff does not dispute that she received notice of the disciplinary charges filed against her; rather, she claims that such notice was impermissibly vague.  Section 3020-a requires that disciplinary charges filed against a tenured employee be in writing and delivered to the employee in person or by certified or registered mail.  N.Y. Educ. L. § 3020-a (1)-(2) (McKinney 2000).

According to plaintiff's complaint, she received a letter from the District notifying her that she was charged with "'Incompetence in that she lacks the ability to develop insight or to modify her behaviors and is mentally incompetent to function in a classroom setting.'" (Compl. ¶ 32.) The letter provided plaintiff with sufficient written notice of the charges against her, in compliance with § 3020-a and notions of fairness inherent in the requirements of due process. Plaintiff was provided with a hearing at which she was given the opportunity to defend herself against the charges. See § 3020-a (3)(c)(I). Plaintiff states no factual allegation which, if true, would support a finding that the third § 3020-a proceeding was not conducted pursuant to the procedural dictates of § 3020-a and the Constitution. In paragraph 41 of the complaint, plaintiff states that Hearing Officer Campagna "issued a decision in which he found first that plaintiff's stalking-type behavior served as a reasonable predicate for a third § 913 examination. . . . [and] supported his finding of a changed mental state with the reports of Drs. Smith and Kronick." This cannot be squared with plaintiff's conclusory allegation that no new evidence or changed circumstances was cited in the decision.

## IV. **CONCLUSION**

Therefore, even assuming plaintiff's factual allegations (as opposed to conclusory statements) are true, defendants' motion to dismiss will be granted on the ground that Ms. Palkovic is not entitled to the relief requested in the complaint.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss plaintiff's complaint is GRANTED, and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 30, 2006
Utica, New York.